IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN F. MURPHY HOMES, INC,　　　　*

Plaintiff,　　　　　　　　　　　　　*

v.　　　　　　　　　　　　　　　　*　　　Civil Action No. 22-2728-PJM

MANAGEMENT INFORMATION
TECHNOLOGY CORPORATION,
　　　　　　　　　　　　　　　　　*

Defendant.

\*\*\*

## MEMORANDUM OPINION

John F. Murphy Homes, Inc. ("JFMH") has sued Management Technology Corporation ("MITC") for breach of contract, alleging that MITC made various fraudulent representations to induce it to enter into the contract between the parties. The Court previously considered a (First) Motion to Dismiss filed by MITC, holding a hearing on that Motion on June 21, 2023. At the end of the hearing, the Court granted MITC's Motion as to JFMH's fraud claims to the extent that they were premised on representations made by MITC <u>after</u> execution of the parties' agreement. The Court also granted MITC's Motion as to JFMH's claim for attorney's fees but denied the remainder of the Motion in all other respects. The Court permitted JFMH to amend its Complaint to allege any <u>pre</u>-contractual fraudulent misrepresentations made by MITC during the parties' negotiations. In response, JFMH filed a Second Amended Complaint (the "Complaint") (ECF No. 24).[1]

MITC thereupon filed the present (Second) Motion to Dismiss Counts II, III, & IV or, in the Alternative, for Summary Judgment (ECF No. 25), which is now fully briefed (*see* ECF Nos. 26,

---

[1] The Second Amended Complaint consists of four counts: Count I – Breach of Contract; Count II – Negligent Misrepresentation; Count III – Intentional Misrepresentation; and Count IV – Concealment.

1

27). Based on the parties' submissions, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons that follow, MITC's (Second) Motion to Dismiss will be **DENIED**.

## BACKGROUND

JFMH is a nonprofit organization dedicated to the treatment of individuals with intellectual and developmental disabilities. ECF No. 24 ¶ 1. MITC is a company that develops workforce management software. *Id.* ¶ 2.

### *Pre-contractual Representations.*

JFMH alleges that, as early as 2018, MITC, through its Senior Agency Consultant, Robert Szostek, began soliciting JFMH as a possible client for MITC's software. *Id.* ¶ 6. In his initial communication with JFMH, Szostek explained that MITC's software could provide solutions tailored to JFMH's operational needs. *See id.* Szostek allegedly represented that, among other things, MITC could provide software programs that would "seamlessly integrate" JFMH's (1) human resources information system (BambooHR); (2) single sign on identity system (Microsoft Azure Active Directory ("Azure AD")); (3) benefits administrative software (PlanSource); and (4) general ledger software (Great Plains). *Id.* ¶ 7. Szostek is also said to have represented that MITC understood well JFMH's security needs and that MITC could provide biometric readers that would integrate with JFMH's software programs. *Id.* ¶ 8. Szostek also purportedly said that MITC could integrate MITC's payroll software with JFMH's existing programs. *Id.* ¶ 9.

On November 18, 2018, Szostek emailed JFMH's Controller, Morgan Parsons, among others, stating that MITC's product could "[i]ntegrate seamlessly with Great Plains to eliminate manual & duplicate data entry," and "[t]rack all trainings, certifications, documents, PTO & accruals (or integrate w/ existing HR)." *Id.* ¶ 10. Szostek also purportedly stated that MITC could tailor its software to "[c]apture actual staff attendance in real-time to maximize accuracy & EVV

2

compliance," and "[r]econcile attendance/EVV data with documentation/HER data captured in Therap." *Id.* ¶ 11.

On December 24, 2018, MITC sent a promotional email to Parsons, touting the recent sale of MITC's Agency Workforce Management software to a "larger provider," and discussing the supposed "smooth integration" between MITC's software and the larger provider's Great Plains software, the same software JFMH used. *Id.* ¶ 13.

MITC's charm offensive allegedly continued over the course of the following two-and-a-half years, during which time MITC supposedly represented again and again that it understood JFMH's operational needs, assuring JFMH that MITC could deliver a product that would "integrate seamlessly" with JFMH's existing software while reducing administrative headaches (such as manual data entry) and costs. *See id.* ¶¶ 17-37.[2]

A few representative communications between MITC and JFMH are claimed to have occurred in the months of January and December of 2020 and January and February of 2021. On January 16, 2020, for instance, Szostek emailed Parsons and Andrew Cowan at JFMH regarding a presentation that MITC had prepared to demonstrate its "extensive integration capabilities with [Great Plains]." *Id.* ¶ 20. Attached to that email was promotional material that celebrated MITC's integration capabilities, claiming that "MITC delivers the most cost effective solutions by taking responsibility of all software development," and declaring that MITC's software would reduce the maintenance costs associated with using Great Plains. *Id.* ¶ 21. An employee of MITC delivered the presentation to JFMH the next day, during which the MITC employee reiterated that the company understood JFMH's operational needs and that its software would integrate well with

---

[2] Given the similarity of facts alleged pertaining to each interaction between MITC and JFMH, the Court provides only representative examples here, but notes that MITC's outreach efforts are said to have included several more emails, numerous phone calls, and video conferences with officers of JFMH between December 2018 and February 2021. *See id.* ¶ 17-37.

JFMH's systems. *Id.* ¶ 22. On December 3, 2020, Szostek sent a new email to JFMH, representing that MITC's software would "integrate seamlessly with Bamboo, PlanSource, and Great Plains to eliminate manual entry." *Id.* ¶ 31. Similar representations were included in an "Executive Summary" about the possible scope of services that MITC could offer JFMH, which Szostek attached to the email. *Id.* Further, on January 7 and February 8, 2021, Szostek spoke by phone with JFMH representatives, including Parsons and JFMH's Director of Information Technology Drew Nelson, during which Szostek reiterated that he was familiar with and understood JFMH's software needs, once again assuring JFMH that MITC's software would "integrate seamlessly" into JFMH's existing systems. *Id.* ¶¶ 33, 35. Nelson later recommended to JFMH's CEO Todd Goodwin that JFMH enter into an agreement with MITC. *Id.* ¶ 35.

### *The Contract.*

On March 8, 2021, JFMH and MITC entered into an annual service contract (the "Contract"), the purpose of which JFMH identifies as the development of three software products dedicated to time and attendance, payroll, and scheduling. *Id.* ¶ 38.[3] The Contract requires MITC to undertake "commercially reasonable efforts to make the Services available to Subscriber," *id.*, Ex. 8 ¶ 2.1, and to "provide the Services in a timely, professional, and workmanlike manner by qualified personnel." *Id.*, Ex. 8 ¶ 2.4. The Contract also contains a clause providing that the governing law of the agreement is the law of Maryland, and an integration clause. *Id.*, Ex. 8 ¶¶ 12, 14. Upon executing the Contract, JFMH paid MITC's annual fee in a single payment of $101,337.38, to save on monthly fees. *Id.* ¶ 40.

---

[3] JFMH claims that a "SaaS Hosting Agreement," which appears to be a contract for a subscription service, is the Contract at issue, and has attached a copy to its Complaint. *Id.* ¶ 38; *id.*, Ex. 8. As will be discussed, MITC disputes that the parties' agreement is limited solely to the SaaS Hosting Agreement. Instead, MITC claims that the SaaS Hosting Agreement, together with its Executive Summary and a "Full Service Software Rental Agreement," constitute the Contract between the parties. ECF No. 25 at 2; *see id.*, Ex. A. Given that JFMH is the nonmoving party, the Court accepts the Complaint's allegations with respect to the scope of the Contract and views those facts in the light most favorable to JFMH. *See Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

4

***Post-contractual Problems.***

JFMH alleges that it began perceiving problems with MITC's performance of the Contract shortly after the deal was signed. *Id.* ¶¶ 44-76.

One problem concerned MITC's less-than-seamless integration of its software with JFMH's Azure AD software, which took approximately five months to complete. *Id.* ¶¶ 44-53. According to JFMH, MITC initially attempted to integrate its software through a "direct VPN connection" to JFMH's servers, which presented a "significant security risk and [was] an unacceptable practice within the IT industry." *Id.* ¶¶ 44-45. JFMH claims that, while MITC eventually rectified this problem and another security issue JFMH identified, it did so only after a long delay. *Id.* ¶¶ 45-53.

JFMH also claims that MITC failed to timely implement the use of biometric devices, which included MITC's failure to provide the correct device in the first place, requiring JFMH to inquire about a replacement and, ultimately, to purchase a replacement itself, rather than have MITC do it. *Id.* ¶¶ 55-58. But, says JFMH, MITC allegedly refused to refund JFMH the amount of the replacement cost. *Id.* ¶ 59. Once JFMH received the correct device, it says, the device apparently still did not work with JFMH's systems, and MITC never delivered a software solution that it had represented would be "easy and efficient" to implement. *Id.* ¶¶ 62-63.

Finally, JFMH identifies numerous other problems with MITC's integration of its software with JFMH's systems. *Id.* ¶¶ 59-76. These included: (i) problems with login functions during small-scale testing, which prevented JFMH from rolling out the system to its 800 employees; (ii) import/export issues, which MITC first stated it could resolve with templates, but then later said those templates "may be impossible" to create; (iii) unannounced changes to MITC's project management team without prior notice to JFMH, which impacted the roll out of MITC's integration; (iv) technical issues, like duplication of emails and failure to properly import phone numbers; (v) MITC's failure to complete mapping accounts for JFMH's software; (vi) errors with the supervisor

codes provided by MITC that did not match JFMH's specifications; (vii) MITC's failure to implement JFMH's PTO schedules; and (viii) issues with the computation of Maine payroll taxes in MITC's software. *Id.* ¶¶ 64-76.

***Procedural History.***

JFMH filed suit in this Court on October 24, 2022. *See* ECF No. 1. Its original Complaint against MITC proceeded in four counts: Count I (Breach of Contract); Count II (Negligent Misrepresentation); Count III (Intentional Misrepresentation); and Count IV (Concealment). *See id.* at 3-6. As a remedy, the original Complaint sought compensatory damages in the amount paid by JFMH to MITC for the Contract ($101,337.38), plus punitive damages and attorney's fees.

On March 28, 2023, MITC filed a (First) Motion to Dismiss for Failure to State a Claim as to Counts II, III, & IV, and the Claims for Punitive Damages and Attorney's Fees. ECF No. 16.

The Court held a hearing on MITC's Motion on June 21, 2023. ECF No. 21. At the end of the hearing, the Court granted MITC's Motion as to Counts II, III, and IV to the extent that those fraud claims derived from MITC's alleged post-contractual misrepresentations, but denied the Motion to the extent that the fraud claims might have derived from alleged pre-contractual statements. ECF No. 22. The Court gave JFMH twenty days leave to amend its Complaint to include allegations of pre-contractual statements in support of its pre-contractual fraud claims. *Id.* The Court denied MITC's Motion as to JFMH's claim for punitive damages but granted the Motion as to JFMH's claim for attorney's fees. *Id.*

The Court considers MITC's (Second) Motion to Dismiss Counts II, III, & IV or, in the Alternative, for Summary Judgment (ECF No. 25), based on MITC's renewed argument that JFMH has failed to state a claim.

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint[,]" and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The court, however, is not required to accept unsupported legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). Unlike most claims, a heightened pleading standard applies to claims of fraud or mistake. Such claims must be pled with "particularity," and must identify "the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This requires the plaintiff to allege 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Corder v. Antero Res. Corp.*, 57 F.4th 384, 401 (4th Cir. 2023) (quoting *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019)). However, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has

been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Edmonson*, 922 F.3d at 553. "When alleging fraud by omission or concealment, plaintiffs may partly rely on information and belief without running afoul of Rule 9(b). However, they must state the factual allegations that make their belief plausible." *Corder*, 57 F.4th at 402.

If a party moving to dismiss attaches to its motion materials outside the pleadings and the court does not exclude those materials in its consideration of the motion, the court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). Summary judgment is properly granted to a movant where there exists no genuine dispute of material fact and the movant demonstrates that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). However, a court need not convert a motion to dismiss to a motion for summary judgment if a movant attaches exhibits that are either "incorporated into the complaint by reference," or are "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Further, conversion of a motion to dismiss into a motion for summary judgment is discouraged where "the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448.

In the case at bar, MITC has attached three exhibits to its (Second) Motion to Dismiss. *See* ECF No. 25-2 to 25-4. The first exhibit consists of three documents, which MITC claims constitute the entirety of the parties' Contract. ECF No. 25-2. The second is a reorganized collection of the exhibits that JFMH attached to its Complaint. ECF No. 25-3. The third is a communication between employees at JFMH and MITC, which purports to show that JFMH's attorney participated in the negotiation of the Contract. *See* ECF No. 25-4.

The Court finds no need to consider any documents not incorporated in, attached to, or integral to the Second Amended Complaint to resolve MITC's Motion. For this reason, and because

the parties have not yet had an opportunity for discovery, *see E.I. du Pont de Nemours & Co.*, 637 F.3d at 448, the Court will treat MITC's Motion solely as a motion to dismiss under Rule 12(b)(6).[4]

## DISCUSSION

### I. Preliminary Matters

MITC does not contest that Count I of the (Second) Amended Complaint (nor of the prior Complaint) fairly states a claim for breach of contract. However the Contract may be construed, JFMH is entitled to recover damages if MITC did not perform the Contract as promised. Nor does the Court re-visit its earlier ruling that JFMH may not recover for supposedly fraudulent representations made by MITC <u>after</u> the parties signed the Contract. That said, it remains relevant for JFMH to attempt to show that certain post-contractual problems associated with MITC's performance evidence MITC's careless or intentional misrepresentations before the Contract was signed with respect to MITC's ability or inability to in fact perform the eventual Contract or, indeed, which concealed material pre-contract facts as to MITC's ability or inability to perform.

The Court, then, engages with MITC's arguments as to JFMH's claim of pre-contractual fraud.

MITC raises two principal arguments in support of dismissal, which it submits apply across the board to JFMH's claims for negligent misrepresentation, intentional misrepresentation, and concealment (collectively, the "Fraud Claims").

<u>First</u>, MITC argues that the Fraud Claims fail as a matter of law because none of MITC's statements or omissions are actionable under Maryland law, but instead were merely promissory in nature, opinion, or puffery. *See* ECF No. 25-1 at 10-12.

---

[4] If the Court did take MITC's exhibits into consideration, and converted MITC's Motion into one for summary judgment, it would, in any case, deny summary judgment on all counts because genuine disputes of material fact exist. For example, as mentioned, the parties disagree about the most fundamental fact of all, *viz.*, which document serves as the operative Contract for the agreement between the parties.

Second, MITC argues that even if its statements are actionable, the Fraud Claims fail because each tort requires the plaintiff to show that it reasonably relied to its detriment on the misrepresentations or omissions of the alleged tortfeasor. *See* ECF No. 25-1 at 6-8. JFMH cannot do so, MITC contends, because any reliance placed on MITC's pre-contractual representations by JFMH would have been unreasonable as a matter of law. *See id.* at 7-10. Central to MITC's argument is its contention that JFMH is precluded from claiming reliance on MITC's pre-contractual representations not only because the parties are sophisticated, but as well because the Contract contains an integration clause. *See id.* at 7-10 (citing *Central Truck Ctr., Inc. v. Central GMC, Inc.*, 194 Md. App. 375, 394 (2010)).

Although the precise elements of each of JFMH's Fraud Claims differ slightly, all require a showing that the alleged tortfeasor made a misrepresentation (or omission) of material fact upon which the plaintiff reasonably relied to its detriment. *See Swinson v. Lords Landing Village Condo.*, 360 Md. 462, 476 (2000) (listing elements for fraudulent (i.e., intentional) misrepresentation); *Cooper v. Berkshire Life Insurance Co.*, 148 Md. App. 41, 57 (2002) (listing elements for negligent misrepresentation); *Hoffman v. Stamper*, 385 Md. 1, 28 n.12 (2005) (listing elements for concealment).

### A. Whether MITC's Pre-contractual Representations Are Actionable.

MITC characterizes its alleged pre-contractual representations as falling into seven categories: (1) "contractual offers that were not accepted by JFMH, as set forth in Exhibits 1, 4, and 6 to the Complaint"; (2) "MITC's statements regarding its contracts with third parties in Exhibit 2 to the Complaint"; (3) "MITC's statement in Exhibit 3 to the Complaint that 'I will send a separate email with details on our extensive capabilities with GP as well'"; (4) "MITC's statement in Attachment 1 to Exhibit 3 regarding its 'cost-effective solutions' that '[r]educe software maintenance costs'"; (5) "MITC's alleged verbal statements that it fully understood and was familiar

10

with JFMH's business, existing software systems/programs, payroll needs, and other needs"; (6) "MITC's alleged verbal statements that its software would 'integrate seamlessly' and with 'no problem' with JFMH's systems and software"; and (7) "MITC's alleged verbal statements that its software was a 'good fit' and/or 'perfect fit.'" ECF No. 25-1 at 10-11.

MITC argues that the first two categories are not actionable because they are "predicated on statements which are merely promissory in nature, or upon expressions as to what will happen in the future." *Id.* at 11 (quoting *Sass v. Andrew*, 152 Md. App. 406, 438 (2003)). As to the remaining categories, MITC argues that these statements are not actionable because they are "vague and indefinite," and as such are better understood as "puffing," "sales talk," or "opinion." *Id.* at 12 (citing *Parker v. Columbia Bank*, 91 Md. App. 346, 354, 360 (1992); *McGraw v. Loyola Ford, Inc.*, 124 Md. App. 560, 582 (1999)).

"A 'false representation' is a statement, conduct, or action that intentionally misrepresents a material fact." *Sass*, 152 Md. App. at 429 (quoting *Parker*, 91 Md. App. at 359). "A 'material' fact is one on which a reasonable person would rely in making a decision.'" *Id.* Statements that amount to nothing more than "'indefinite generalities of exaggeration' which could deceive no rational person" cannot serve as a basis for a fraud claim. *McGraw*, 124 Md. App. at 583 (quoting *Wolin v. Zenith Homes, Inc.*, 219 Md. 242, 247 (1959)). Nor can statements that consist solely of matters of "opinion," *Parker*, 91 Md. App. at 359-60, or "puffery," *McGraw*, 124 Md. App. at 582. However, if it is alleged that an alleged tortfeasor made a statement that otherwise may appear promissory or too indefinite to be actionable, that statement may still give rise to an actionable claim of fraud if it speaks to the "existing intention of a party at the time of contracting." *Parker*, 91 Md. App. at 360-61 (citing *Levin v. Singer*, 227 Md. 47, 63 (1961)). Thus, "fraud may be predicated on promises made with a present intention not to perform them." *Id.*

11

The Court agrees that certain of the statements allegedly made by MITC in its negotiations with JFMH, when considered in isolation and taken at face value, could fall into the category of being too indefinite, expressions of opinion, or puffery to be actionable. These include the alleged assertions that MITC's software would be a "perfect fit" and could "integrate seamlessly" with JFMH's software. *See, e.g.*, ECF No. 24 ¶ 9; *see also Milkton v. French*, 159 Md. 126, 132-33 (1930) (holding that seller's statement that a home buyer would be "perfectly safe" in a newly constructed house was mere puffery, in part because "[e]verybody knows a new house, as an old one, is never perfect in construction"); *Parker*, 91 Md. App. at 360 (holding that defendant's statement that plaintiffs had "nothing to worry about" and his "alleged misrepresentations as to his own experience in loan administration" were merely matters of opinion).

However, viewing the facts alleged in the light most favorable to JFMH, certain of MITC's representations arguably speak to matters of material fact, including MITC's understanding during negotiations as to whether it was knowingly unable or carelessly prepared to perform the promises made. *See Parker*, 91 Md. App. at 360, 364-65. These include MITC's representations that MITC could tailor its software to JFMH's operational needs, which MITC claimed to understand, and that MITC's software could perform discrete, specialized functions like "[t]racking all trainings, certifications, documents, PTO & accruals (or integrate w/ existing HR)." ECF No. 24, Ex. 1. According to JFMH, MITC never intended to deliver these services in the first place and, in fact, never did. *See, e.g., id.* ¶¶ 17, 23, 26. Accordingly, assuming JFMH can prove them, some of the alleged misrepresentations made by MITC may constitute actionable statements of material fact. *See, e.g., Parker*, 91 Md. App. at 364; *Burt v. Delmarva Sur. Assocs.*, No. 3417, 2020 Md. App. LEXIS 410, at *14-15 (App. Apr. 30, 2020). But the Court will not dismiss JFMH's claims on this basis. Each alleged misrepresentation will have to be evaluated and weighed as to their individual or collective effect on whether JFMH was inappropriately induced to enter into the Contract.

12

### B. The Effect of the Contract's Integration Clause and the Relevance of the *Central Truck* Decision.

MITC also seeks dismissal of JFMH's Fraud Claims on the grounds that JFMH cannot claim to have reasonably relied upon MITC's pre-contractual representations because the Contract contains an integration clause. ECF No. 25-1 at 8. MITC argues that the integration clause and Maryland's parol evidence rule preclude JFMH from asserting claims based on MITC's pre-contractual representations. *Id.* at 7-8. MITC further contends that, except for certain limited warranties, the Contract disclaims any warranties or guarantees, pre-contractual or otherwise, on behalf of MITC. *Id.* at 8. Finally, MITC relies upon *Central Truck Center, Inc. v. Central GMC, Inc.*, 194 Md. App. 375 (2010), to urge that these clauses and JFMH's status as a sophisticated negotiating partner compel the conclusion that any reliance placed on MITC's pre-contractual representations was unreasonable as a matter of law. *Id.* at 7-10.

The Court is unpersuaded by MITC's arguments. As indicated, in Maryland, a plaintiff asserting claims of misrepresentation (whether intentional or negligent) or concealment must prove that it reasonably relied on a misrepresentation by the alleged tortfeasor. *See, e.g., Central Truck,* 194 Md. App. at 394 (citing *Lloyd v. General Motors Corp.*, 397 Md. 108, 135-38 (2007) (identifying reasonable reliance as a necessary element of negligent misrepresentation and fraudulent concealment)). True, where a plaintiff alleges misrepresentation in connection with a contract that contains an integration clause, a court is ordinarily barred by Maryland's parol evidence rule from considering extra-contractual evidence regarding the parties' agreement if the evidence varies or contradicts the agreement's written terms. *See Whitney v. Halibut, Inc.*, 235 Md. 517, 526-27 (1964). However, where a court is called upon to "determin[e] issues of fraud, 'there is no parol evidence rule to be applied.'" *Parker*, 91 Md. App. at 363 (quoting *Whitney*, 235 Md. at 527). At the same time, "[t]he terms of a written contract can, of course, be used as evidence of the

reasonableness of the [plaintiff's] reliance upon alleged misrepresentations contrary to those terms." *Id.* at 364.

Here, each of JFMH's Fraud Claims is premised on questions of MITC's supposed misrepresentations or omissions, which individually or collectively are claimed to have induced JFMH to enter into the Contract for services that were never delivered and arguably MITC was never capable of delivering. In short, the parol evidence rule does not apply to JFMH's tort claims, and the Court, in resolving MITC's Motion to Dismiss, is not precluded from considering allegations of pre-contractual representations in the Complaint. *See Parker*, 91 Md. App. at 364-65.

*Central Truck* does not compel a different result. That case concerned the sale of a vehicle dealership by Central GMC to Central Truck. *See* 194 Md. App. at 380. Central Truck alleged that Central GMC defrauded it by making misrepresentations in financial documents concerning the dealership's performance in prior years. *Id.* at 380-81. Central Truck claimed that during negotiations, Central GMC presented Central Truck with records that artificially inflated the store's past profits, which Central Truck relied upon to enter the agreement, believing that the store's past performance would be indicative of its future performance. *Id.* at 390-91.

The Maryland Court of Special Appeals (now known as the Appellate Court of Maryland) affirmed the trial court's order granting summary judgment in favor of Central GMC, holding that Central Truck's reliance was unreasonable as a matter of law. *Id.* The court premised its holding in part on the fact that the financial statements "were not prepared in anticipation of the parties' negotiations," and therefore could not be considered misrepresentations at all. *Id.* at 390. Moreover, the agreement at issue "contained an integration clause, which explicitly superseded all prior and contemporaneous agreements, understandings, inducements, or conditions." *Id.* at 391.

The court rejected Central Truck's argument that the fraud exception to the parol evidence rule should apply, concluding that if the financial statements were "as important to Central Truck's

14

decision-making process as it claimed, it had every reason to seek incorporation into the Agreement but, for whatever reason, it did not." *Id.* The court found particularly persuasive the reasoning of the D.C. Circuit in *One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283 (D.C. Cir. 1988), where then-Judge Ruth Bader Ginsburg wrote that "the parol evidence rule" could not "retain vitality" if "a party with the capacity and opportunity to read a written contract, who [has] execute[d] it, not under any emergency, and whose signature was not obtained by trick or artifice" is later permitted to claim fraud in the inducement. *Central Truck*, 194 Md. App. at 391-92 (quoting *One-o-One Enterprises, Inc.*, 484 F.2d at 1287 (internal quotation marks omitted)).

JFMH is no Central Truck. For starters, each representation allegedly made by MITC was decidedly made "in anticipation of the parties' negotiations." 194 Md. App. at 390. Distinct from the financial documents which Central GMC itself had relied on for its own business operations prior to negotiations in *Central Truck*, *see id.*, JFMH's Complaint suggests that MITC's representations originated *solely* in the context of negotiations. *See, e.g.*, ECF No. 24 ¶ 6 ("As early as 2018, MITC . . . began soliciting JFMH to provide JFMH with . . . software solutions, which would be tailored to JFMH's organization."); *id.* ¶¶ 20-21 (alleging that MITC's Szostek sent an email to JFMH stating that MITC had "extensive integration capabilities with [Great Plains]," and that MITC could "[r]educe software maintenance costs of using . . . Great Plains.").

Further, the *Central Truck* court was persuaded by the fact that Central Truck, "represented . . . by experienced legal and financial professionals," reviewed the financial statements central to its claim of fraud, "but it did not take further action to verify or question the numbers prior to entering into the [a]greement, even in light of its undisputed knowledge" that an audit of Central GMC's accounts "was in the offing." 194 Md. App. at 390-91. Here, in contrast, JFMH's Complaint suggests that it was at a continuing information deficit as to the subject matter of the Contract. Whereas Central Truck was deemed to possess the sophistication and personnel to be able

15

to identify issues with the financial statements and to negotiate warranties related to them as part of its agreement with Central GMC, JFMH avers that it lacked the expertise necessary to negotiate the technical details of software integration in order to ensure the smooth transition that MITC promised. *See* ECF No. 26 at 15. Further, the *Central Truck* court found Central Truck had constructive knowledge of the possibility that Central GMC may have actually inflated its profits. Here, JFMH alleges that it had no notice prior to executing the Contract that MITC would not and arguably could not deliver the software integration and solutions that it represented it would and could.

Finally, there is a difference in procedural postures between *Central Truck* and the present case. *Central Truck* affirmed the grant of summary judgment in favor of the defendant. *See* 194 Md. App. at 390, 393-94. In this case, at this stage, the Court is concerned only with the question of whether JFMH has alleged sufficient facts to plausibly posit claims of negligent misrepresentation, intentional misrepresentation, and concealment. *See Twombly*, 550 U.S. at 570. "[I]t may well be that when the facts are more fully developed," the Court "will conclude, as a matter of law, that the reliance here was not reasonable." *Parker*, 91 Md. App. at 364.[5]

But for now, MITC's (Second) Motion to Dismiss must fail.

**II.     Whether JFMH Has Stated a Claim for Negligent Misrepresentation or Concealment.**

MITC argues that JFMH fails to state a claim for negligent misrepresentation (Count II) or concealment (Count IV) because both torts require a plaintiff to show that the alleged tortfeasor

---

[5] Although not central to the Court's reasoning, there is a further distinction to be made as to *Central Truck*. The agreement in that case was governed by a single "Asset and Real Estate Purchase Agreement" with a single integration clause. 194 Md. App. at 380. Here, MITC argues that its agreement with JFMH was comprised of two separate documents (each with its own integration clause), neither of which incorporates or otherwise refers to the other. *See* ECF No. 25-1 at 8-9 (directing the Court's attention to integration clauses in the "SaaS Agreement" and the "Rental Agreement"). Thus, JFMH and MITC's full agreement, according to MITC itself, was not actually integrated into a single document. *Central Truck*'s holding on the effect of an integration clause is inapposite.

owed a duty of care to the plaintiff, whereas MITC owed no such duty to JFMH while negotiating an arms-length transaction. *See* ECF No. 25-1 at 13-14. JFMH counters that MITC owed it a "duty to tell the truth" as to its "knowledge and experience with JFMH's systems and business needs." ECF No. 26 at 15.

To state a claim for negligent representation, a plaintiff must show, among other things, that the defendant owed a duty of care to the plaintiff and negligently asserted a false statement that the plaintiff reasonably relied on to his detriment. *See Cooper*, 148 Md. App. at 57 (citation omitted). To state a claim for concealment, the plaintiff must show, among other things, that the alleged tortfeasor owed him a duty to disclose, as well as the other elements similar to the claim of negligent misrepresentation. *See Hoffman*, 385 Md. at 28 n.12. It is this duty to disclose element in both counts that the parties strenuously dispute.

In general, "[a] duty to disclose arises in certain relationships such as a confidential or fiduciary relationship." *Hogan v. Md. State Dental Ass'n*, 155 Md. App. 556, 566-67 (2004). "Maryland jurisprudence requires that the alleged duty be independent of any contractual obligation." *Sun-Lite Glazing Contrs. v. Berkowitz*, 37 Fed. Appx. 667, 680 (4th Cir. 2002). Maryland courts have held that a duty of disclosure may arise in certain arms-length transactions when the parties' interactions suggest that they share an "intimate nexus." *Gruppo Essenziero Italiano, S.p.A. v. Aromi D'Italia, Inc.*, No. CCB-08-65, 2011 U.S. Dist. LEXIS 82217, at *23 (D. Md. July 27, 2011). "This 'intimate nexus' may be satisfied by contractual privity." *Id.*

Although, as JFMH suggests, Maryland courts have found this requirement to be met in certain pre-contractual negotiations, *see* ECF No. 26 at 15 (citing *Weisman v. Connors*, 312 Md. 428 (1988); *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328 (1982)), whether such a duty arises ordinarily depends upon the specific context of the case. *See Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 620-21 (2017). Decisions of the Fourth Circuit and

17

this Court do suggest that claims for negligent misrepresentation (and by extension, concealment) are not appropriate where a loss is purely economic, and the parties have engaged in arms-length commercial bargaining. *See, e.g., Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 98 (1992); *21st Century Props. Co. v. Carpenter Insulation & Coatings Co.*, 694 F. Supp. 148, 151 (D. Md. 1988).

Here, however, even though the loss suffered by JFMH was purely economic, there remains some question, at least at this juncture, whether the parties actually engaged in arms-length bargaining. JFMH alleges that their bargaining process was not only drawn out but, as something of a neophyte in computer matters, it suggests that it was essentially importuned by an aggressive MITC to buy into MITC's pre-contractual seductive promises. Arguably this could give rise to a duty of disclosure on the part of MITC. *See Balfour Beatty Infrastructure*, 451 Md. at 620-21. However, summary judgment and, if it comes to that, trial, may point to a different result.

### III.     Whether JFMH Has Stated a Claim for Intentional Misrepresentation.

JFMH styles Count III of its Complaint as one for "intentional misrepresentation," which is merely a variation on the term "fraud." ECF No. 24 at 15. "Fraud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement." *Sass*, 152 Md. App. at 432 (citation omitted). To state a claim for fraud, a plaintiff must allege facts sufficient to provide a plausible basis to infer that: (1) "the defendant made a false representation to the plaintiff"; (2) "its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth"; (3) "the misrepresentation was made for the purpose of defrauding the plaintiff"; (4) "the plaintiff relied on the misrepresentation and had the right to rely on it"; and (5) "the plaintiff suffered compensable injury resulting from the

misrepresentation." *Lasater v. Guttmann*, 194 Md. App. 431, 470 (2010) (quoting *Nails v. S & R, Inc.*, 334 Md. 398, 415 (1994)).

The Court finds that JFMH has plead sufficient facts to plausibly state a claim for fraud in the inducement. For the reasons stated, *supra*, the Court is satisfied that certain of MITC's alleged representations can fairly be portrayed as false statements of material fact, the falsity of which MITC was aware at the time of their utterance. JFMH has also plausibly alleged that it relied on these misrepresentations to its detriment. At this early stage of proceedings, the Court cannot conclude that JFMH's reliance on those representations was unreasonable as a matter of law. *See Parker*, 91 Md. App. at 361-62, 364. Although MITC claims JFMH was a relatively sophisticated negotiating partner, JFMH alleges that, much to the contrary, it was unsophisticated in the realm of software integration and development. *See* ECF No. 24. According to JFMH, it sought these specialized services from MITC precisely because it lacked that sophistication. *See* ECF No. 26 at 16. JFMH suggests that MITC's courtship was, so to speak, rather hot and heavy. Finally, JFMH alleges that its reliance on MITC's misrepresentations led it to enter into the Contract and pay MITC more than $100,000 for its services. *See, e.g.*, ECF No. 24 ¶ 98. That, in the Court's view, suffices to plausibly allege "compensable injury resulting from the misrepresentation." *Lasater*, 194 at 470.

The Court denies MITC's Motion as to JFMH's claim for intentional misrepresentation (Count III).

## CONCLUSION

Accordingly, the Court **ORDERS** that:

MITC's (Second) Motion to Dismiss Counts II, III, & IV or, in the Alternative, for Summary Judgment (ECF No. 25) is **DENIED**.

A separate Order will **ISSUE**.

September 26, 2023

/s/ Peter J. Messitte
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE